# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 13-CR- 490 |
| CECILIO GONZALEZ | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Gonzalez was Ordered Removed from the United States on May 30, 2007, due to a felony drug trafficking conviction. On April 16, 2013, Gonzalez was found by law enforcement present in the United States once again engaging in drug trafficking related activity. Gonzalez lied to law enforcement regarding his identity and citizenship status as well as possessed a driver's license in the name of another individual. Gonzalez's presence in the United States, possession of false identification documents, false statements to law enforcement all occurred while Gonzalez was technically still on parole from his New York narcotics conviction. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the advisory guideline range of 57 to 71 months.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted), *citing United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

I.  **BACKGROUND**

On September 12, 2013, Gonzalez was charged in an indictment with reentry after deportation, falsely representing to be a United States citizen, making false statements, and identity theft, all in violation of 18 U.S.C. §§ 1326(a) and (b)(2), 911, 1001, and 1028(a)(4) arising from the his presence in the United States after his deportation on May 30, 2007, his statements to federal agents that he was an United States citizen born in Puerto Rico, and his possession of a New York State driver's license in the name "Hector Mojica-Cruz," on or about April 16-17, 2013, in Philadelphia, Pennsylvania.

During his plea colloquy, Gonzalez admitted to the following facts:

Gonzalez is a native and citizen of the Dominican Republic who first entered the United States on an unknown date at an unknown place without inspection and admission by an immigration officer. On March 22, 1991, INS adjusted his status to that of a lawful permanent resident (LPR). On March 22, 2007, Gonzalez was ordered deported from the United States to the Dominican Republic after a drug trafficking conviction in New York. ICE officials served Gonzalez with a form I-294, Warning to Alien Ordered Removed or Deported, dated April 20, 2007, which alerted him that he was prohibited from entering, attempting to enter or being in the United Stated "at any time" from the date of his departure from the United States. The I-294 was signed by Gonzalez and by the officer serving the warning. On May 30, 2007, Gonzalez was removed from the United States to the Dominican Republic via a Justice Prisoner and Alien Transportation System (JPATS) flight. A Form I-205, Warrant of Deportation of Removal, was executed by immigration officials in connection with Gonzalez's deportation and contains Gonzalez's signature, photograph and fingerprints.

On April 16, 2013, Homeland Security Investigations Special Agents and Task Force Officers were conducting surveillance operations in the vicinity of "I" Street and Hunting Park Avenue in North Philadelphia and later observed what appeared to be a narcotics trafficking transaction occurring in the parking lot of the Casa de Espana restaurant in Philadelphia, Pennsylvania. Agents and Officers arrested three individuals including Gonzalez who identified himself to law enforcement as Hector Mojica-Cruz. Pursuant to the arrest of all three individuals, law enforcement seized approximately 611 grams of heroin, $47,699 USD (cash), a scale and other drug-trafficking paraphernalia. Gonzalez was in possession of a valid New York driver's license in the name Hector Mojica-Cruz.

Post- Miranda, Gonzalez identified himself to agents as Hector Manuel Mojica and

claimed to have been born on March 1, 1966 in Bayamon, Puerto Rico. When asked by HSI special agents for additional biographical and identification information, Gonzalez stated he was born at Bayamon Hospital in Bayamon, Puerto Rico and had lived in Bayamon until moving to the New York, NY area approximately six years ago. Gonzalez claimed his address at that time was Calle Bandoriotis #76; Bayamon, Puerto Rico. HSI agents observed Gonzalez's fingertips appeared surgically altered. When questioned about this, Gonzalez told HSI agents they were messed up due to "his work in construction." Throughout the interview by federal HSI agents, Gonzalez maintained he was "Hector Mojica-Cruz" and further maintained he was born in Puerto Rico, thereby being a United States citizen.

HSI agents, in conjunction with ICE/ Enforcement & Removal Operations (ERO), and NYS DMV officials determined through investigation that the photographs contained in the " Hector Mojica-Cruz," New York Driver's License number (OLN) 320 740 933 was the same person in the photograph on New York Driver's License number 876 669 540, in the name of Cecilio Gonzalez with a date of birth of 3/6/1967. DMV officials conducted a criminal history check and learned that Cecilio Gonzalez was a convicted felon who was deported to the Dominican Republic. Based on that information, ERO officers queried various law enforcement databases and identified Cecilio Gonzalez with a date of birth of 3/6/1967, as a Dominican national with alien number 093 023 511 who had been deported from the United States in 2007 based on prior drug convictions. ERO agents provided HSI agents with a copy of Cecilio Gonzales' photograph and fingerprints from the Cecilio Gonzales arrest in New York and contained in the Cecilio Gonzales alien file. The photographs from the Mojica-Cruz from NY State Driver's license OLN 320 740 933 in the defendant's possession, the New York Driver's License number 876 669 540 in the name of Cecilio Gonzalez, and the May 30, 2007 A

Form I-205, Warrant of Deportation of Removal for Cecilio Gonzales alien number 093 023 511 matched the defendant. The partial fingerprints taken from the Gonzalez on April 16-17, 2013 were compared to the NYS criminal record of Cecilio Gonzalez and the fingerprints contained in the Alien file for Cecilio Gonzales number 093 023 511. All fingerprints matched.

A Certification of Non-Existence of Record confirms no record exists of an application by Gonzalez for permission from the Secretary of Homeland Security to reenter the United States.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant is 29 years imprisonment, three years supervised release, a $850,000 fine, and a $400 special assessment.

### B. Sentencing Guidelines Calculation.

The Probation Department correctly calculated the advisory guideline range as follows: Counts One and Three were grouped pursuant to USSG § 3D.1(c) "Group 1." The base offense level for Group 1 is 8 pursuant to USSG§ 2L1.2. 16 levels were added pursuant to USSG 2L1.2(b)(1)(A) because Gonzalez had a prior drug felony conviction for which the sentence imposed exceeded 13 months. 2 levels were added pursuant to USSG § 3C1.1 as Gonzalez's willful false statements made to law enforcement qualify as obstruction of justice. This results in an adjusted offense level of 26 for Group 1.

Counts Two and Four were grouped together and classified as "Group 2." The base offense level for Group 2 is 8 pursuant to USSG § 2L2.2. 2 levels were added pursuant to USSG § 2L2.2(b)(3) because Gonzalez is an unlawful alien who was deported May 30, 2007. 4 levels were added pursuant to USSG § 2L2.2(b)(3) because Gonzalez fraudulently obtained a United

States passport in 2009 under the name "Hector Mojica Cruz." 2 levels were added pursuant to USSG §3C1.1 for obstruction of justice resulting in an adjusted offense level for Group 2 of 16.

The combined adjusted offense level is 26. Gonzalez receives a 3 level downward adjustment for acceptance of responsibility pursuant to USSG §§ 3E1.1(a) and (b) resulting in a total offense level of 23.

Thus, with a base offense level of 23 and a criminal history category of III, Gonzalez's advisory guideline range is 57-71 months imprisonment.

## III.    ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is imprisonment within the advisory guideline range of 57-71months.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . .the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[1]

Gonzalez engaged in a serious offense. Having been previously deported for a drug trafficking offense, Gonzalez was illegally present in the United States involved in yet another drug trafficking offense. To avoid detection, Gonzalez took the extraordinary measure of surgically altering his fingertips to frustrate law enforcement's ability to detect his true identity. Gonzalez lied to law enforcement about his identity and nationality and possessed a New York driver's license with another individual's name. A research of database records also showed Gonzalez applied for and received a U.S. passport in another individual's name. His crimes falls squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsel in favor of a guideline sentence.

---

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006), *quoting United States v. Navedo Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006).

Gonzalez has a previous conviction for a drug trafficking offense for which he was sentenced to 4-12 years imprisonment. His period of parole for this offense is in effect until December 2016. He was deported due to this offense. Gonzales not only violated his conditions of removal by re-entering the United States without permission, he further violated his conditions of parole by continuing to engage in drug trafficking activity, obtaining false identity documentation and lying to law enforcement about his identity. It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. *Id.*

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). Also, restitution is not an issue in this case. § 3553(a)(7).

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a period of imprisonment within the advisory guideline range of 57 to 71 months.

**IV. CONCLUSION**

For these reasons, the government recommends that the Court impose a sentence within

the advisory guideline range of 57 to 71 months imprisonment.

        Respectfully submitted,

        ZANE DAVID MEMEGER
        United States Attorney


        */s Melanie B. Wilmoth*
        MELANIE BABB WILMOTH
        Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Jose Louis Ongay, Esquire
527 Cooper Street
Camden, New Jersey 08102

                                        */s Melanie B. Wilmoth*
                                        MELANIE BABB WILMOTH
                                        Assistant United States Attorney

DATED: January 16, 2015