IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | : | |
| --- | --- | --- |
| | : | Docket Numbers |
| vs. | : | |
| | : | 13-cr-00490-01 |
| | : | |
| CECILIO GONZALEZ, | : | |
| Defendant. | : | |

DEFENDANT'S SENTENCING MEMORANDUM

*I.     Defendant's Personal Information*

Defendant is a 47 year old man. Defendant was born in Dominican Republic and is currently an undocumented alien. At one point Defendant obtained a lawful permanent residency, but lost it due to a drug conviction, for which he was also deported on May 30, 2007. Defendant will be deported again.

Defendant does not have a high school diploma and only attended school until the sixth grade. He stopped going to school in order to work. Defendant has four children that currently live in the United States.

*II.    The Charges, the Plea, and the Potential Sentence*

Defendant was charged, and plead guilty to an Indictment charging Reentry after Deportation in violation of 18 U.S.C. §§ 1326(a) and (b) (2),

1

Falsely Representing to be a United States Citizen, in violation of 18 U.S.C. § 911, and Making False Statement, in violation of 18 U.S.C. § 1001. The PSI concluded that Defendant's Base Offense Level is 23, a criminal history category of III, and a guideline imprisonment range of 57 to 71 months. See, PSI ¶ 57. The Defendant is not subject to a mandatory minimum sentence.

III.     *Section 3553(a) Factors*

   a. *The Nature and Circumstances of the Offense*

   This is a malum prohibitum offense. Defendant did not hurt anyone by reentering the United States illegally.

   b. *The Need for the Sentence Imposed*

   In determining the appropriate sentence, the Court must consider: (a) seriousness of the offense; (b) the respect for the law; and (c) just punishment. The offense in this case did not involve violence by Defendant. In fact, the act of reentering the United States did not harm a single person. While all offenses are serious, this is definitely a less serious offense. A sentence below the recommended guideline range will account for the less seriousness nature of the offense and still promote respect for the law and constitute just punishment.

c. *The Sentence must protect the Public from Further Crimes of the Defendant*

Defendant's conduct did not place the public in danger as such this is not a concern in this case. As such, a sentence significantly below the recommended guideline range is appropriate.

d. *The Sentence must provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment*

In this case, since Defendant is going to be deported, it is respectfully requested that there are no special circumstances such as medical conditions or the need for vocational training that need to be addressed by the Court.

e. *Sentencing Alternatives*

In this case, because Count 1 is a Class C Felony, the defendant is eligible for probation. 18 U.S.C. § 3561(c) (l).

f. *The Recommended Sentencing Guidelines*

The recommended guideline range is 57 to 71 months of incarceration. The Court should consider the following problems with the computation of this range. First, the range is much higher simply because the Defendant was deported after committing a drug offense, however, the crime of reentry is qualitatively the same regardless of the underlying

conviction.

This enhancement results in double counting of the conviction. The conviction is counted to increase the base offense level and then also counted to increase the criminal history category. However, even if the above concerns were not present, a sentence for reentering the United States after deportation can address the 3553(a) factors and still be substantially lower than the recommended range. Under these circumstances, the Court should not impose a sentence in the recommended range.

## IV. Other Factors the Court Should Consider

### a. Sentence Reduction for the Plea

The Court should also consider that Defendant plead guilty, pursuant to a cooperation plea agreement. Because of this plea, Defendant has received a three level reduction in the computation of the applicable base offense level. It is respectfully submitted that this reduction is insufficient. Defendant reduced the work of the Court and the Government and saved both the resources of the Court and the Government. The Court should consider that if only a few more defendants were to exercise their right to a jury trial, there would be larger backlogs and increased costs. Thus, persons who give up their constitutional rights and plead guilty provide a significant benefit to the criminal justice system.

The Court should consider this factor as a basis for a further reduction of Defendant's sentence despite the three level reduction in the base offense level awarded to Defendant by the PSI pursuant to U.S.S.G. § 3E1.1(a)(b) of the guidelines. In fact, pre-guidelines reductions of sentences for guilty pleas were larger. <u>See</u>, Justice Stephen G. Breyer, <u>the Federal Sentencing Guidelines and the Key Compromises upon Which They Rest</u>, 17 Hofstra L. Rev. 1 (1988). Specifically, in this article Justice Breyer shows that reductions for guilty pleas pre-guidelines were larger than the reduction resulting from the three level base offense level reduction from § 3E1.1(a)(b).

*b. Judicial Economy*

Many courts have discussed the costs of incarceration. In <u>U.S. v. Chavez</u>, 230 F.3d 1089 (8th Cir. 2000), the Court discussed that the guideline sentence will probably cost taxpayers $836,000, and the Defendant his life. The Court also stated that guidelines range sentences for nonviolent offenders drain billions from taxpayers and keeps potentially productive members of society locked up, causing staggering opportunity costs. In <u>U.S. v. Angelos</u>, 345 F. Supp. 2d 1227 (D. Utah 2004), the Court stated that the cost of mandatory 61-year-sentence runs to $1,265,000, money that could otherwise be spent on other law enforcement or social programs to reduce

crime. In U.S. v. Hughes, 825 F. Supp. 866 (D.Minn.1993), the Court stated that the non-rehabilitation purposes of incarceration-retribution, deterrence and incapacitation would all be more than adequately served by far shorter sentences. Both society and the Defendant will pay a dear cost for this sentence and receive very little in return. Similarly, imposing the recommended range in this case, it is respectfully submitted, would result in similar inefficiencies.

   *c. Deportation*

The consequence of deportation should also mitigate the sentence. See Jordan v. De George, 341 U.S. 223, 232 (1951) (Jackson, J.) (Deportation is "a life sentence of banishment in addition to the punishment which a citizen would suffer from the identical acts."); U.S. v. Szanto, 2007 WL 3374399 (N.D. Ill. Nov.8, 2007) (District court granted a downward variance on several factors).

   *c. Status as an Illegal Alien in Prison*

Aliens face more severe restrictions in prison than non-aliens. See U.S. v. Navarro-Diaz, 420 F.3d 581 (6th Cir. 2005) (illegal reentry case remanded in light of Booker where district court noted defendant would be punished more than a citizen due to ineligibility for six months half way house at end

6

of term); see also U.S. v. Cardosa-Rodriguez, 241 F.3d 613 (8th Cir. 2001). After Booker, this circumstance can still be a mitigating consideration. U.S. v. Davoudi, 172 F.3d 1130 (9th Cir.1999) (ineligibility for minimum-security designation of up to six months of home confinement authorized by 18 U.S.C. § 3624(c) can justify departure); see McClean v. Crabtree, 173 F.3d 1176 (9th Cir. 1999), although departure on this ground was not available prior to Booker if the defendant pled guilty to illegal entry. See, e.g., U.S. v. Martinez- Ramos, 184 F.3d 1055 (9th Cir. 1999); U.S. v. Pacheco-Soto, 386 F. Supp. 2d 1198(D.N.M.2005) (deportable alien convicted of drug crime sentenced to 60 months, rather than minimum guideline term of 74 months, in light of his ineligibility for early release, minimum security prison, or credits for participation in residential drug or alcohol abuse program).

   *d. Period awaiting deportation*

   The Court should know that Defendant generally spent months awaiting deportation. As such, this Defendant will not only not qualify for a hallway house but also then will spent additional time in custody waiting to be deported. It is respectfully submitted that this Court should also consider this factor in determining the appropriate sentence.

   V. *There is no Restitution Issue*

*Conclusion*

Wherefore for the foregoing reasons it is respectfully submitted that following the overarching mandate of section 3553, i.e., that the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection, a sentence lower than the recommended range is appropriate

                                                                    Respectfully,

                                                                    ***/s/Jose Luis Ongay***

                                                                      _____

                                                                      José Luis Ongay, Esquire

Date: January 20, 2015

## CERTIFICATE OF SERVICE

I certify that a copy of this memorandum has been served upon AUSA Melanie Babb Wilmoth, via the ECF filing system.

                                             ***/s/Jose Luis Ongay***

                                             José Luis Ongay, Esquire

Date: January 20, 2015